**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOHN W. BILBREY,Plaintiff, | ) ) ) |
| v. | ) )  Case No. CIV-06-134-F |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,Defendant. | ) ) ) ) ) ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. John W. Bilbrey, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Mr. Bilbrey's application for supplemental security income benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded.

**I.The Administrative Decision**

Following a remand by the Appeals Council, the Administrative Law Judge (ALJ) issued his decision on June 20, 2005, and found Mr. Bilbrey not disabled. AR 13-21. The ALJ applied the five-step sequential evaluation process, *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), and found at step one that Mr. Bilbrey had not engaged in substantial gainful activity since his alleged disability onset date of September 15, 1995. AR

14, 20.  At step two, the ALJ determined that Mr. Bilbrey has "right-sided hemiplegia, cerebral palsy, history of seizures, anxiety, and depression" and that these impairments are severe within the meaning of the Social Security regulations. AR 14-15, 20.       At step three, the ALJ determined Mr. Bilbrey's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 15, 20.

The ALJ next determined Mr. Bilbrey's residual functional capacity.  The ALJ found Mr. Bilbrey can lift or carry 20 pounds occasionally and 10 pounds frequently, that he requires a sit/stand option with a need to alternate positions every 20 minutes throughout the day, that he has a limited ability to push and pull and has minimal use of his right non-dominant hand as an assist only for gross manipulations.  Mr. Bilbrey cannot operate foot pedals with his right foot and he must avoid climbing ladders, ropes and scaffolds, working at unprotected heights and work that requires the operation of a motor vehicle.  In addition, Mr. Bilbrey can understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making.  The ALJ further included a limitation that interpersonal contact must be incidental to work performance.  AR 18, 20.  Based on this residual functional capacity, the ALJ determined at step four of the sequential evaluation process that Mr. Bilbrey could not return to his past relevant work.  AR 19, 20.

At step five, the ALJ determined that Mr. Bilbrey could perform work as a cashier II, assembly worker and hand packager.  AR 19, 20-21.  The ALJ further determined that these

jobs exist in significant numbers both in the local and national economy. AR 19, 20-21. Therefore, the ALJ determined Mr. Bilbrey was not disabled. AR 19, 21.

Mr. Bilbrey appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied his request for review, AR 5-7, making the ALJ's decision the final decision of the Commissioner.

## II.    Issues Presented for Judicial Review

Mr. Bilbrey presents the following issues for judicial review: (1) whether the ALJ erred, as a matter of law, in failing to properly evaluate the opinion of a consultative examiner, Dr. Longwell, regarding Mr. Bilbrey's limited ability to stand; (2) whether the ALJ erred, as a matter of law, in failing to properly develop the record by ordering additional mental and physical consultative examinations; (3) whether the ALJ committed legal error by relying on vocational expert testimony that conflicted with the Dictionary of Occupational Titles without obtaining a reasonable explanation for such conflict; and (4) whether the ALJ's residual functional capacity determination is supported by substantial evidence.

## III.   Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.     Analysis**

    **A.     Claim One – Whether the ALJ's Residual Functional Capacity Assessment as to Mr. Bilbrey's Ability to Stand Constitutes Legal Error**

Mr. Bilbrey first claims the ALJ committed legal error in his residual functional capacity determination as to Mr. Bilbrey's ability to stand. The ALJ found Mr. Bilbrey retained the ability to sit or stand for only twenty minutes at one time before alternating positions. He further found that Mr. Bilbrey would need to continue alternating positions throughout the day. AR 17, 20.

Mr. Bilbrey claims this finding failed to give appropriate consideration and weight to the opinion of Dr. Longwell, a consultative examiner, board certified in neurology. Dr. Longwell opined that Mr. Bilbrey has "no limitation in his ability to do work at activities such as sitting, moving about, hearing, and speaking." Dr. Longwell further opined Mr.

Bilbrey "*probably* could not work in activities which require him to stand for the majority of his work period." AR 171 (emphasis added).

The governing regulations require the ALJ to consider every medical opinion in the record. *See* 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). Where, as here, there is no controlling weight given to a treating physician's opinion, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant" as the ALJ must do "for any opinions from treating sources, nontreating sources and other nonexamining sources . . . ." *Id.*, § 416.927(f)(2)(ii).

The ALJ specifically referenced Dr. Longwell's standing assessment in reviewing the medical evidence of record. AR 16 ("Dr. Longwell opined that the claimant could sit and move about without limitation, but probably could not perform work that requires standing for a majority of the day."). Indeed, by including the alternating positions requirement in the residual functional capacity determination, the ALJ gave greater weight to Dr. Longwell's opinion than that of at least four other consultative examiners, all having determined that Mr. Bilbrey could stand for at least six hours in an eight-hour work day. *See* AR 174, 183, 212, 236. Mr. Bilbrey ignores this evidence entirely in arguing that Dr. Longwell's opinion is consistent with the other medical evidence of record.[1]

---

[1] Specifically, Mr. Bilbrey contends Dr. Longwell's opinion is consistent with the following medical evidence: history of cerebral palsy with surgical lengthening of the heel cord and ankle-foot orthosis; the requirement that shoe inserts be worn; history of grand mal seizures; and mobility
(continued...)

Further, Mr. Bilbrey has not addressed the record of his own subjective complaints during a consultative examination by Dr. Truong.  Mr. Bilbrey stated that he experienced lower back pain with standing for more than two hours.  AR 205.  The ALJ's residual functional capacity assessment is consistent with Mr. Bilbrey's subjective complaints as reflected in Dr. Truong's examination notes.

Mr. Bilbrey has failed to demonstrate the ALJ committed legal error in his treatment of Dr. Longwell's opinion.  Mr. Bilbrey's first claim of error should be denied.[2]

**B.     Claim Two – Whether the ALJ Erred as a Matter of Law in Failing to Properly Develop the Record**

Mr. Bilbrey's second claim also is premised on allegations that the ALJ committed legal error.  According to Mr. Bilbrey, the ALJ should have ordered additional mental testing as recommended by Dr. Keith Green during a consultative examination in September 2003. *See* AR 263 ("One would recommend that a Mental Status Examination and more in-depth history interview be conducted and that additional personality tests be administered, notably the Rorschach and the Millon Clinical Multiaxial Inventory-III, to rule out a mood disorder and a personality disorder."); *see also* AR 264 ("[O]ne would recommend that achievement testing also be administered both to rule out learning disabilities as well as to provide an

---

[1](...continued)
issues due to right side weakness and diminished motor strength.  While the Court agrees the evidence is consistent with Dr. Longwell's opinion, Mr. Bilbrey fails to demonstrate how this evidence demonstrates a more limited ability to stand than that found by the ALJ.

[2]Mr. Bilbrey's additional challenge that the positions of hand packager and cashier II require standing a majority of the day is addressed *infra* in relation to his third claim of error.

independent means of ascertaining whether or not [Mr. Bilbrey] has the requisite reading skills for responding meaningfully, that is, in a content specific manner on the MMPI-II."). Mr. Bilbrey claims without this additional psychological testing, the medical evidence relating to the severity of Mr. Bilbrey's mental impairments is inconclusive and that Dr. Green's assessment is incomplete and, therefore, not persuasive.[3]

In addition, Mr. Bilbrey claims the ALJ should have ordered "an updated consultative [physical] examination as requested by his representative." *See* Plaintiff's Opening Brief at 18, *citing* AR 380. The most recent physical examination in the record was conducted in 2001. AR 205-210. According to Mr. Bilbrey, this examination was no longer accurate at the time of the second hearing. Mr. Bilbrey claims an updated examination was necessary to address his subjective complaints that he needed to be in a reclined position up to four hours a day and Mr. Bilbrey's increased seizure activity which Mr. Bilbrey testified is brought on by stress. AR 364-365, 366-367. Mr. Bilbrey notes that his representative brought the issue of further development of the record to the attention of the ALJ at the close of the hearing:

> I just want to point out to you that we've not had a physical exam since 2001 for this young man, and we did have a CE exam back in '03, and the doctor

---

[3]Dr. Green conducted the psychological consultative examination at the request of the ALJ, H. Maxwell Darks, the ALJ presiding over Mr. Bilbrey's first administrative hearing. AR 257.

      then recommended that there be additional testing, and that's never been done, so I would like for you to consider that in making your Decision.

AR 380.[4]

### 1.     Additional Mental Testing

The Tenth Circuit has recognized that a consultative examination is often required for proper resolution of a disability claim "where the medical evidence in the record is inconclusive" or "where additional tests are required to explain a diagnosis already contained in the record." *Hawkins v. Chater*, 113 F.3d 1162, 1165 (10th Cir. 1997). The ALJ's duty to further develop the record in these circumstances is triggered if there is "some objective evidence in the record suggesting the existence of a condition which could have a *material impact* on the disability decision . . . ." *Id.* at 1167 (emphasis added).

Here, Dr. Green's examination and initial testing provides some objective evidence that Mr. Bilbrey may suffer from a mood disorder and/or a personality disorder and further that Mr. Bilbrey may suffer from a learning disability. AR 260-264. Mr. Bilbrey's testimony concerning his educational background, his inability to stay enrolled in college courses and his inability to hold a job also provides some objective evidence of these mental conditions. AR 352-354. The question in this case, however, is whether the existence of this evidence suggests a condition that could have a material impact on the disability decision.

---

[4] The Court concurs with Mr. Bilbrey's interpretation of the record that his representative sought both additional physical and mental consultative examinations as the reference to the "CE exam back in '03" is to Dr. Green's psychological examination.

In determining Mr. Bilbrey's mental residual functional capacity, the ALJ rejected earlier findings of consultative examiners who had concluded that Mr. Bilbrey suffered no medically determinable mental impairment. *See* Psychiatric Review Technique Forms, AR 191-203, 221-233; *see also* Medical Consultant Review Form, AR 234. The ALJ specifically stated that the mental residual functional capacity determination was "based on updated evidence that was not available to the reviewing physician at the State Agency, and a different interpretation of the evidence by the State Agency physician." AR 18.

The ALJ found limitations where Dr. Green had opined none existed. Under the "A" criteria of the Listings, the ALJ found Mr. Bilbrey experiences "moderate limitations due to depression/anxiety." AR 17. As the ALJ noted, Dr. Green did not find "definitive signs of a depressive disorder or any signs of anxiety." *Id. See also* AR 262. Using the "B" Criteria of the Listings to rate Mr. Bilbrey's functional limitations, the ALJ determined that Mr. Bilbrey suffered mild limitations in his activities of daily living, moderate limitations in social functioning and moderate deficiencies in concentration, persistence and pace. AR 17. These findings include limitations not present in Dr. Green's Medical Source Statement where Dr. Green had concluded that Mr. Bilbrey suffered no impairments that would affect his ability to understand, remember, and carry out instructions, his ability to respond appropriately to supervision, co-workers, and work pressure in a work setting, or any other capabilities. AR 265-266.

The ALJ determined Mr. Bilbrey had the following mental residual functional capacity: able to understand, remember and carry out routine step instructions, respond

appropriately to supervisors and co-workers in jobs that do not require independent decision making, and have interpersonal contact only incidental to work performance. AR 17-18.

While Mr. Bilbrey suggests the ALJ's mental residual functional capacity findings should be ignored in the analysis of the ALJ's duty to develop the record, the findings are indicative of whether additional testing as recommended by Dr. Green "could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. Significantly, Dr. Green's report states that the additional testing was recommended only to "corroborate" his Axis I diagnostic impression: Rule Out Depressive Disorder, NOS[5], Rule Out Learning Disorder NOS and Rule Out Personality Disorder. AR 264. And, Dr. Green opined that "[p]ersonality test results provide no compelling evidence in support of an Axis I disorder." AR 262. In light of these opinions, and because the ALJ incorporated mental limitations in the residual functional capacity determination that took into account Mr. Bilbrey's diminished learning capacity and ability to interact socially, Mr. Bilbrey has failed to demonstrate additional testing could reasonably be expected to be of material assistance. *Hawkins*, 113 F.3d at 1169. The ALJ, therefore, did not err in his duty to develop the record.

### 2. **Additional Physical Examination**

The ALJ determined Mr. Bilbrey had the physical residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, that he requires a sit/stand option with a need to alternate positions every 20 minutes throughout the day, that he has a limited

---

[5]Not Otherwise Specified.

ability to push and pull and has minimal use of his right non-dominant hand as an assist only for gross manipulations. Mr. Bilbrey cannot operate foot pedals with his right foot and he must avoid climbing ladders, ropes and scaffolds, working at unprotected heights and work that requires the operation of a motor vehicle. AR 18, 20.

The ALJ specifically addressed the request by Mr. Bilbrey's representative for an additional physical examination. The ALJ stated:

> It should be noted that the claimant requested an updated consultative physical examination. As the residual functional capacity set forth above incorporates the functional limitations reported by the claimant during the hearing, the undersigned does not find that an additional consultative examination is warranted. The limitations set forth above are consistent with the claimant's daily activities, which include performing light household chores activity, and his acknowledged exertional abilities.

AR 18. Mr. Bilbrey contends the additional examination was needed because "[t]he ALJ's decision was rendered almost five years after [Mr. Bilbrey's] last consultative physical examination and he had since allegedly developed additional impairments . . . ." *See* Mr. Bilbrey's Reply at 6. Mr. Bilbrey claims the additional physical examination was required to ascertain the severity of his medical condition and that such an examination would have been of "material assistance" in resolving Mr. Bilbrey's disability claim.

The record shows that Mr. Bilbrey was seen for a "grand mal seizure" in January 1998 and Mr. Bilbrey reported at that time that he had a history of seizures with severe anxiety. AR 168. Mr. Bilbrey was prescribed Dilantin and Ativan for treatment. *Id.* In May 2005, however, Mr. Bilbrey listed his current medications to include only Ibuprofen. AR 309. At the hearing before the ALJ, Mr. Bilbrey testified that he had three or four seizures in 2004

11

and at the time of the hearing in May 2005, he had experienced two seizures for that year. AR 366. Mr. Bilbrey testified aggravation and tension cause the seizures. *Id.* According to Mr. Bilbrey, following a seizure it takes him approximately 30 minutes to an hour to be fully functional again. Mr. Bilbrey testified he had been "checked out once" by a doctor for his seizures and that the doctor told him there was not any physical or medical reason for the seizures. AR 367.

While further testing related to Mr. Bilbrey's seizures may confirm the medical reason for Mr. Bilbrey's condition, such testing would not materially assist the ALJ in determining the limitations Mr. Bilbrey experiences as a result of the condition. The ALJ considered Mr. Bilbrey's testimony in this regard and that testimony accurately depicted the current limitations experienced by Mr. Bilbrey as a result of the seizure disorder. The ALJ incorporated limitations due to a "history of seizures" in his hypothetical questions to the vocational expert:

> [A]ssume that this individual, due to a history of seizures, must avoid climbing robes, ladders, and scaffolds. He must avoid work at unprotected heights, work around dangerous machinery, and the operation of motor vehicles must be avoided.

AR 373. The vocational expert testified that the jobs of cashier II, assembly worker and hand packager would not be impacted by those limitations. *Id.* The ALJ relied on the vocational expert's testimony in making his step five findings that Mr. Bilbrey could perform these jobs. AR 19, 20.

Mr. Bilbrey also testified at the hearing that he spends about four hours out of an eight hour day in his recliner, with his feet up, to alleviate pain. AR 365. Mr. Bilbrey's testimony sufficiently apprised the ALJ of this alleged limitation. Other evidence of record including Mr. Bilbrey's daily activities and minimal need for medical care and/or medications provided sufficient evidence to support the ALJ's assessment of Mr. Bilbrey's pain. Mr. Bilbrey has failed to demonstrate how an additional consultative examination would materially assist the ALJ in determining the limitations Mr. Bilbrey experiences as a result of his pain. Therefore, the ALJ did not err in his duty to develop the record and Mr. Bilbrey's second claim should be denied.

### C.   Claim Three – Whether the ALJ Committed Legal Error by Relying on Vocational Expert Testimony that Conflicted with the Dictionary of Occupational Titles Without Obtaining a Reasonable Explanation for the Conflict

The ALJ, relying on the testimony of a vocational expert, identified the following three types of jobs that Mr. Bilbrey could perform given his age, education, work experience and residual functional capacity: cashier II, assembly worker and hand packager. AR 19, 20-21. Neither the vocational expert's testimony nor the ALJ's decision identifies the specific Dictionary of Occupational Titles (DOT) numerical listing for these positions.[6] Mr. Bilbrey has attached to his Opening Brief the DOT listing for cashier II, 211.462-010, and hand packager, 920.587-018. Because more than one listing exists for assembly worker, Mr.

---

[6]The vocational expert referenced the DOT in identifying the job of cashier II, but did not provide a numerical listing for that job. AR 372.

Bilbrey has attached three listings that relate to assembly work: assembler, small products I, 706.684-022; assembler, production, 706.687-010; and assembler small products II, 739.687-030.  The Commissioner does not contest the application of these specific DOT listings nor identify any additional listings that should be considered.

The vocational expert testified all three jobs are classified as light and unskilled.  AR 372, 375-376.  However, the DOT classifies the job of hand packager at the medium exertional level.  The ALJ did not inquire whether a discrepancy existed as to the exertional level of this position and the vocational expert did not explain the discrepancy.  The ALJ had a duty to make such inquiry.  *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is [a] consistency [between the occupational evidence provided by a vocational expert and the occupational information supplied by the DOT].").  The ALJ committed legal error in relying on the vocational expert's testimony without obtaining a reasonable explanation for the apparent conflict.  *Id*. at *4 ("When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.").  *See also Smith v. Barnhart*, 172 Fed. Appx. 795, 799 (10th Cir. 2006) (unpublished op.) (where DOT classifies jobs as medium, not light, work and the vocational expert does not supply any reason for classifying the exertional demands of the occupations differently than the DOT, the ALJ may not rely on the vocational expert's indication that the jobs are light work).

Without addressing the conflict between the DOT and the vocational expert's testimony as to the exertional demands of the hand packager job, the Commissioner contends that if Mr. Bilbrey can perform any one of the jobs the vocational expert identified the "ALJ's decision must stand."[7] However, as Mr. Bilbrey demonstrates, conflicts also exist between the DOT and the vocational expert's testimony about the remaining jobs of cashier II and assembly worker.

The cashier II job requires a reasoning level of 3, "defined as the ability to '[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations.'" *Hackett v. Barnhart*, 395 F.3d at 1176 (*quoting* DOT, Vol. II at 1011). As part of Mr. Bilbrey's residual functional capacity determination the ALJ found Mr. Bilbrey had the ability to "understand, remember, and carry out routine step instructions." AR 20, ¶ 5. In *Hackett*, the claimant retained the "attention, concentration, persistence and pace levels required for simple and routine work tasks." *Id.*, 395 F.3d at 1176. The Tenth Circuit determined this reasoning level appeared more consistent with level two which "requires the worker to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations.'" *Hackett*, 395 F.3d at 1176 (*quoting* DOT, Vol.

---

[7]The Commissioner contends the ALJ made sufficient significant number findings as to each job identified and therefore, any error is harmless unless it impacts all three jobs identified by the vocational expert. *See Allen v. Barnhart*, 357 F.3d 1140, 1144-1145 (10th Cir. 2004); *see also Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

II at 1011). The Tenth Circuit remanded the action to "allow the ALJ to address the apparent conflict between Mr. Bilbrey's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id*. at 1176. Similar to the facts in *Hackett*, the ALJ's RFC determination that Mr. Bilbrey has the ability to "understand, remember, and carry out routine step instructions" appears to be in conflict with the reasoning level three required for the job of cashier II and a remand is required so that the ALJ can address this inconsistency. *Compare Garcia v. Barnhart*, 188 Fed. Appx. 760, 767 (10th Cir. 2006) (unpublished op.) (finding conflict between DOT and vocational expert testimony required remand where vocational expert identified jobs claimant could perform that required a reasoning level of three and ALJ's residual functional capacity determination limited claimant to routine, repetitive and simple work).

In addition, the ALJ found Mr. Bilbrey had the "mental capacity to perform work where interpersonal contact is only incidental to work performance." AR 20, ¶ 5. The vocational expert testified that "the cashier job might exceed that incidental public, incidental interpersonal contact." AR 373. Thus, the ALJ's finding that Mr. Bilbrey could perform the cashier II job is not supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").[8]

---

[8] The vocational expert further testified that certain types of cashier jobs require only incidental contact including jobs in a parking toll booth, parking lot booth or in a restaurant. AR (continued...)

The third type of job identified by the vocational expert is "assembly jobs." As previously stated, the vocational expert did not reference a specific DOT listing when testifying about this job. The ALJ made a residual functional capacity determination that Mr. Bilbrey "would have minimal use of his right non-dominant hand. His right [h]and could be used as an assist only for gross manipulations." AR 20, ¶ 5.[9] The vocational expert testified that the assembly jobs could be done "using the non-dominant hand as an assist only." AR 372. However, all three DOT listings for assembly jobs submitted by Mr. Bilbrey include a requirement for constant or frequent reaching, handling and fingering. Therefore, there appears to be a conflict between the vocational expert's testimony and the DOT. *Compare Carson v. Barnhart*, 140 Fed. Appx. 29, 37 (10th Cir. 2006) (unpublished op.) (vocational expert testimony that claimant could perform bench assembly jobs conflicted with DOT's description of those jobs where all required at least frequent reaching and claimant could reach only occasionally with his right upper extremity). In addition, as Mr. Bilbrey points out, the DOT descriptions for the assembly jobs suggest bilateral manual dexterity is

---

[8](...continued)
374. However, when determining at step five that Mr. Bilbrey could perform the cashier II job, the ALJ did not specifically identify these positions. Moreover, the vocational expert did not provide any testimony and the ALJ made no findings as to the degree to which the cashier II job base would be eroded by the incidental contact requirement or determine whether the specific cashier jobs identified are jobs that exist in significant numbers in the local or national economy. Therefore, the vocational expert's testimony about these specific cashier jobs does not constitute substantial evidence to support the ALJ's findings.

[9]The most recent physical residual functional capacity assessment in the record similarly finds that Mr. Bilbrey has manipulative limitations for handling and fingering on the right only. AR 237.

required. The ALJ had an affirmative duty to ask about the possible conflict between the DOT listings for assembly jobs and the vocational expert's testimony. His failure to do so requires a remand.

Because inconsistences between the DOT and the testimony of the vocational expert exist as to each of the jobs identified by the vocational expert a remand is required.[10]

**D.     Claim Four – Whether the ALJ's Residual Functional Capacity Determination is Supported by Substantial Evidence**

As his final claim of error, Mr. Bilbrey claims the ALJ's residual functional capacity determination is not supported by substantial evidence. Mr. Bilbrey specifically challenges the ALJ's residual functional capacity determination as to the exertional requirement of standing. As discussed in relation to Mr. Bilbrey's first claim of error, the Court determined the ALJ's residual functional capacity determination as to the standing requirement is supported by the medical evidence of record. Therefore, the ALJ's residual functional capacity determination is supported by substantial evidence and this claim should be denied.

In sum, Mr. Bilbrey's first, second and fourth claims of error are without merit and should be denied. However, Mr. Bilbrey's third claim of error requires a remand so that the ALJ may address the apparent conflicts between the vocational expert's testimony for those jobs identified – cashier II, assembly worker and hand packager – and the DOT listings. On

---

[10]Mr. Bilbrey also claims "there is no indication in the DOT that the positions of hand packager and cashier II do not involve standing a majority of the day as required by most light and unskilled jobs." *See* Mr. Bilbrey's Opening Brief at 14. In light of the need for a remand, the ALJ should address through vocational expert testimony, any conflict that might exist with respect to Mr. Bilbrey's standing limitations and the standing requirements set forth in the DOT listings for the jobs identified by the vocational expert.

remand, the ALJ should develop the record by obtaining vocational expert testimony to address these apparent conflicts. The ALJ is encouraged to require the vocational expert to identify the specific DOT numerical listings for each job identified.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by January __2nd__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __11th__ day of December, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE